## US DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

* * * * * * * * *

**SHARIKA TOLBERT; BRIANNA IVY; ALICIA SPENCER; APRIL BRANCH; KORNIETHA BROOKS; YASHA HALL; SHAMARAH HALL**

Hon.

Case No.  1:25-cv-00543

Plaintiffs,

**COMPLAINT AND JURY DEMAND**

v.

**ROLLAN VAN EGMOND; BIG SKY PROPERTIES, LLC; AVALON PROPERTIES OF GRAND RAPIDS, LLC**

Defendants.

---

## COMPLAINT

Now come Plaintiffs Sharika Tolbert, Brianna Ivy, Alicia Spencer, April Branch, Kornietha Brooks, Yasha Hall, and Shamarah Hall by and through their attorneys, and state the following.

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Sharika Tolbert (Tolbert) is a resident of Kent County, Michigan.

2.  Plaintiff Brianna Ivy (Ivy) is a resident of Kent County, Michigan.

3.  Plaintiff Alicia Spencer (Spencer) is a resident of Kent County, Michigan.

4.  Plaintiff April Branch (Branch) is a resident of Kent County, Michigan.

5.  Plaintiff Kornietha Brooks (Brooks) is a resident of Ottawa County, Michigan.

6.  Plaintiff Yasha Hall (Yasha Hall) is a resident of Ottawa County, Michigan.

7.  Plaintiff Shamarah Hall (Shamarah Hall) is a resident of Kent County, Michigan.

1

8.  Defendant Rollan Van Egmond (Van Egmond) is an individual residing in Kent County, MI.

9.  Defendant Big Sky Properties, LLC (Big Sky Properties), is a domestic limited liability company that regularly conducts business in Kent County, MI.

10. Defendant Avalon Properties of Grand Rapids, LLC (Avalon Properties), is a domestic limited liability company that regularly conducts business in Kent County, MI.

11. This Court's subject matter jurisdiction rests on 28 U.S.C. §1331.

12. Supplemental jurisdiction over the state law claims asserted here rests on principles of ancillary and pendent jurisdiction, 28 U.S.C. §1367(a). The claims arise from a common nucleus of facts with the federal claim alleged herein and are so related to the federal claims as to form part of the same controversy under Article III of the U.S. Constitution.

13. Venue is proper in this district under 28 U.S.C. §1391 because Defendants reside in this district and because a substantial part of the events giving rise to the Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

### Background

14. Van Egmond owns and operates Big Sky Properties and Avalon Properties. All three share a common address of 3750 Walker NW, Grand Rapids, MI, 49544 in Kent County, MI.

15. Van Egmond is a residential landlord and owns approximately thirty rental units as himself and as the owner of Big Sky Properties and Avalon Properties.

2

16. Van Egmond uses both Big Sky Properties and Avalon Properties in the operation of his business as a residential landlord.

17. Van Egmond transfers his properties between himself and his companies for no consideration.

18. Van Egmond frequently takes legal action in his own name when the property is owned by one of his companies.

19. Upon information and belief, Van Egmond does not generally respect any formal distinction between himself and his companies, Big Sky Properties and Avalon Properties.

20. Upon information and belief, Van Egmond does not keep separate financial accounts for each company, Big Sky Properties or Avalon Properties.

21. Upon information and belief, Van Egmond does not maintain corporate formalities with each of his companies, Big Sky Properties and Avalon Properties.

22. In 2022 and 2023, the Fair Housing Center of West Michigan submitted discrimination complaints (hereinafter "Fair Housing Complaint") against Van Egmond with the U.S. Department of Housing and Urban Development (HUD) on behalf of nine black women who are all either current or past tenants of Van Egmond.

23. All the above Plaintiffs were named on the Fair Housing Complaint. Those claims remain pending.

24. According to the Fair Housing Complaint, Van Egmond showed a pattern of unfairly discriminating because of race, sex, disability, and familial status.

25. The Fair Housing Complaint alleged occurrences where Van Egmond refused to rent to or deal with black women; discriminated against black women in the conditions or

terms of the lease, rental occupancy, or in services or facilities; and engaged in predatory business practices toward black women.

26. The Fair Housing Complaint was based on the statements of the nine women, as well as a "rental preliminary analysis" test in which a white female potential tenant and a black female potential tenant attempted to rent properties from Van Egmond.

27. Although both test subjects had a son, a Section 8 voucher, and a low credit score, the white woman was offered several advantages over the black woman, including rent that was $50 less each month.

28. Van Egmond engaged in a practice of discrimination towards black women that included: charging them for repairs generally covered by landlords, unjustly blaming them for damages and charging them for the repairs, asserting terms regarding children and guests not included in their leases, assuming black guests were unauthorized occupants, tasking white neighbors to monitor and report on their activities, entering their units unannounced and without notice (often when they were in a state of undress), using derogatory and racialized language toward them, engaging in physical intimidation of them, and penalizing them for their credit scores by charging them more each month.

**Sharika Tolbert**

29. Sharika Tolbert, a black woman, signed a lease dated February 10, 2020 at Van Egmond's property owned by Avalon Properties at 4767 Ravenswood Dr. SW, Grandville, MI, 49418. She remained there until on or around May 10, 2022.

30. Van Egmond refused to pay to fix the furnace when it broke in November 2021, telling Ms. Tolbert she was wrong about her heating issues, leaving Ms. Tolbert without heat. When Ms. Tolbert told him that she smelled gas in her building, Van

4

Egmond told her that she was lying even though a maintenance worker also informed Ms. Tolbert that he could smell the gas. There was later a fire in Ms. Tolbert's building on or about June 7, 2022. During both instances, Van Egmond referred to Ms. Tolbert as a "bitch."

31. Van Egmond regularly yelled, swore at, and talked down to Ms. Tolbert. When she brought up maintenance issues to him, Van Egmond told Ms. Tolbert he was tired of her "bitching." In one instance while talking to Ms. Tolbert, Van Egmond used the phrase "Are you dumb or are you stupid?"

32. On several occasions, Van Egmond entered Ms. Tolbert's unit without notice or permission. In one instance, Ms. Tolbert was asleep in her locked apartment early in the morning. She awoke to Van Egmond inside her apartment staring at her. Ms. Tolbert was naked at the time. Van Egmond neither called nor knocked before entering.

33. Van Egmond gave Ms. Tolbert a lease violation when the father of her children, Richard Tolbert, a black man, would come to visit his children at her apartment.. There is not a guest policy in the lease.

34. There was a fire in the building in April 2022, which resulted in Ms. Tolbert's unit being condemned. Ms. Tolbert's possessions were rifled through and stolen when her apartment was left unlocked after the fire. Van Egmond falsely claimed Ms. Tolbert trashed the unit despite two police reports documenting the breaking and entering.

35. After the fire, Van Egmond pressured Ms. Tolbert to return to her unit even though the Fire Marshall advised her not to enter because the building was condemned.

36. Van Egmond kept Ms. Tolbert's security deposit, which she later won back in a small claims case.

37. In 2022, the Fair Housing Center and HUD filed a discrimination complaint on Ms. Tolbert's behalf. That complaint remains pending.

### Brianna Ivy

38. Brianna Ivy, a black woman, signed a lease on or around October 2022 at Van Egmond's property owned by Avalon Properties, at 4766 Brookside Drive Southwest, Grandville, MI 49418. She remained there until on or around September 2023.

39. When Ms. Ivy moved in, the closet doors were in poor condition. Van Egmond made her pay for their repair. When the screen door of her unit was damaged due to a storm, he charged her $300 for its repair.

40. Ms. Ivy's car, a 2008 Saturn SUV, was not working and was parked in her driveway. Van Egmond told her she needed to move it or he would get it towed. She then parked it in her garage. Van Egmond continued to threaten to have it towed and harassed Ms. Ivy to the point that she sold it at a loss for $500.

41. Van Egmond regularly yelled, swore at, and talked down to Ms. Ivy, often in front of her young daughter. He called her "nasty," "deadbeat," and when she was moving out he called her a "bitch." He would tell her that she needed to move out, even though her rent was fully paid. He would create fake eviction papers and put them in her mailbox and stuff them under her door.

42. Van Egmond would go through Ms. Ivy's mailbox and comment on the mail she received.

43. On several occasions, Van Egmond entered Ms. Ivy's unit without notice or permission. In one instance, Ms. Ivy had called his assistant about her dishwasher

overflowing late at night. His assistant provided her with some paper towel but Van Egmond did not come to repair it for two days. When he did come, he arrived unannounced early in the morning. Ms. Ivy was asleep in her locked apartment at the time in a state of half-dress. She awoke to Van Egmond inside her apartment. Her bedroom door was open at the time and he was able to see her. When she told him to leave, he yelled at her and told her it was her fault he had to be there.

44. Van Egmond accused her daughter's father and her mother of being unauthorized guests. She threw her mother a birthday party during her tenancy and was fearful the entire time Van Egmond would come and make her guests leave.

45. Ms. Ivy's unit was part of a four-plex that shared a dumpster with another four-plex owned by Van Egmond. Van Egmond would accuse Ms. Ivy of being responsible for trash in the yard because the trash would sometimes contain diapers and Ms. Ivy had a daughter. When Ms. Ivy explained to Van Egmond that her daughter had not been in diapers for two years, he did not believe her and regularly made her pick it up. If she didn't, he would charge her. Van Egmond also forced Ms. Ivy to scrub the siding on the outside of the building.

46. Van Egmond also forbid Ms. Ivy's daughter from drawing with chalk on the sidewalk outside the building.

47. Van Egmond kept Ms. Ivy's security deposit after she moved out despite the fact that nothing in the unit was damaged, and she had replaced the doors and screens herself prior to moving.

**Alicia Spencer**

48. Alicia Spencer, a black woman, lived at Von Egmond's property owned by Avalon Properties at 967 Cedar Run Ct NW, Walker MI, 49534 on August 17, 2022.

49. Ms. Spencer was renting from Van Egmond with a Section 8 voucher.

50. When Ms. Spencer first moved into her unit, the toilet was not working. After Van Egmond agreed to have it fixed, he billed Ms. Spencer for fixing the toilet. A Fair Housing Center investigation found that Van Egmond has made similar repairs for white tenants without charge.

51. When the pilot light for the water heater in Ms. Spencer's unit went out, Van Egmond accused her of breaking it. When the pilot light continued to go out, Ms. Spencer was afraid to ask Van Egmond to come fix it. Van Egmond also accused her of breaking his lawn mower.

52. Van Egmond used the term "nigger" towards Ms. Spencer in front of her minor children. He would regularly yell at her and belittle her. Ms. Spencer was afraid to ask Van Egmond questions about her tenancy as a result.

53. After an argument between Ms. Spencer and a white neighbor, the neighbor reported to Van Egmond that she was afraid of Ms. Spencer. Van Egmond served Ms. Spencer with a 30-day notice of eviction and refused to hear Ms. Spencer's side of the story regarding the argument with Ms. Spencer's neighbor.

54. On one occasion, Van Egmond walked into the house without notice or Ms. Spencer's permission and surprised Ms. Spencer and her boyfriend, Vernal Shaw, who is a black man. When Ms. Spencer asked Van Egmond why he was in her apartment, he screamed at her and accused her of "trashing" her unit and asked when she was going to "get out."

55. Unprompted, Van Egmond searched for the criminal history of two of Ms. Spencer's guests, both black men, and reported that information to Ms. Spencer's Section 8

case worker, falsely alleging that Ms. Spencer's guests were unauthorized occupants.

56. Additionally, Van Egmond entered Ms. Spencer's unit without notice or permission and removed all her belongings. He placed them in an unlocked garage where her belongings were rifled through and stolen.

57. When Ms. Spencer moved out of the residence, Van Egmond did not report the property's alleged damage to Section 8 until directly before the deadline. Van Egmond had not yet inspected the property at the time of issuing the report to Section 8.

58. Van Egmond kept Ms. Spencer's security deposit after she moved out and charged her for damage that was beyond normal wear and tear. Ms. Spencer denied responsibility for the damage.

59. In 2022, the Fair Housing Center and HUD filed a discrimination complaint on Ms. Spencer's behalf. That complaint remains pending.

**April Branch**

60. April Branch, a black woman, signed a lease dated April 1, 2021 to rent Van Egmond's property owned by Avalon Properties at 4787 Ravenswood Dr. SW, Grandville, MI 49418.

61. Community Rebuilders assisted Ms. Branch with rent for the lease.

62. The downstairs neighbors, who were white, were hostile to Ms. Branch and her children and complained about them to Van Egmond. He called Ms. Branch, yelled at her, and told her that she needed to move to a different unit so the white neighbors would no longer be bothered by her children. Ms. Branch's children were listed on the lease.

63. In April 2021, Van Egmond and Ms. Branch had an argument about an alleged mess that Ms. Branch did not create. Van Egmond had a hammer in one hand and began talking to Ms. Branch very aggressively. During the argument, Van Egmond swung to hit Ms. Branch with his other hand.

64. The unit Ms. Branch moved into had plumbing issues. Feces were not being properly disposed of and toilet water was leaking onto the floor. Ms. Branch was too afraid of Van Egmond after his assault to ask for help with repairs.

65. On April 2, 2021, one day after her lease started, Van Egmond gave Ms. Branch a Notice to Quit "immediately." Van Egmond and Ms. Branch eventually agreed that Ms. Branch could remain on the property until August 31, 2021.

66. When Ms. Branch moved out of the unit, Van Egmond kept Ms. Branch's entire security deposit despite Ms. Branch doing no damage to the apartment beyond normal wear and tear.

67. In 2022, the Fair Housing Center and HUD filed a discrimination complaint on Ms. Branch's behalf. That complaint remains pending.

**Kornietha Brooks**

68. Kornietha Brooks, a black woman, signed a lease dated February 1, 2022 to rent Van Egmond's property owned by Avalon Properties at 4798 Ravenswood SW, Grandville, Michigan 49418.

69. Michigan State Housing Development Authority (MSHDA) assisted Ms. Brooks with rent for the lease.

70. After her lease had started, while Ms. Brooks was moving her items into her apartment, she arrived at her unit to discover Van Egmond was already inside looking through her possessions.

71. Shortly after Ms. Brooks moved into the apartment, Van Egmond informed her that she had to pay him an additional $500 due to her credit score. When she refused since the fee was not part of the original lease agreement, he tacked it on to her rent payment as an owed balance.

72. There were several issues with the apartment that Ms. Brooks noticed upon moving in – the patio door would not lock and the screen door was taped from the previous tenant. Van Egmond charged Ms. Brooks for these damages upon her move out.

73. Ms. Brooks informed Van Egmond that her dishwasher was not working. The worker Van Egmond sent hit a pipe and caused water to leak all over Ms. Brooks' apartment. When Ms. Brooks called Van Egmond to inform him of this, he told her that he was not coming out to deal with it. He told Ms. Brooks how to locate the maintenance closet in the building and had her turn off the water for her unit herself. Van Egmond never addressed the issue, even after the carpet developed mildew and the flooring incurred water damage. He also charged Ms. Brooks for these damages upon her move out.

74. When the washer and dryer units broke down in Ms. Brooks' building, Van Egmond accused her of breaking it to steal the coins inside.

75. Ms. Brooks was the only black tenant in her building. Once, her neighbors, who were white, stole her garbage can and began going through her trash. When she informed Van Egmond, he did nothing to help her retrieve it.

76. Ms. Brooks watched her grandchildren in the evenings because her daughter, Porsha Day, worked second shift. Van Egmond told Ms. Brooks that she lived in a "kids free" building and was not permitted to have her grandchildren there. There is no provision regarding children in Ms. Brooks' lease.

11

77. Van Egmond regularly used belittling and offensive language towards Ms. Brooks during their interactions. Once, when Ms. Brooks was waiting for MSHDA to process her rent payment, Van Egmond said "you black people" to her regarding her use of a rental assistance program.

78. Ms. Brooks' boyfriend at the time, Beshaun Payne, would occasionally come and visit her at the unit. One of her neighbors, who had a Confederate flag displayed in his window, called Van Egmond whenever Mr. Payne came to visit. Van Egmond informed Ms. Brooks that she couldn't have anyone over. There is no guest policy in Ms. Brooks' lease.

79. On November 10, 2022, Ms. Brooks received backpay from DHHS for the caretaking of her grandchildren in the amount of $3,120. She attempted to pay Van Egmond from that sum, but he told her that the money did not matter, he just wanted her out of the apartment. Van Egmond served her with a Demand for Possession informing her that it was because her grandkids were regularly at her apartment unit.

80. Ms. Brooks moved out of the unit in December 2022. Van Egmond kept Ms. Brooks' security deposit when she moved out. He then charged her damages for issues with the apartment which Ms. Brooks did not cause. Ms. Brooks filed a small claims case to try and remedy the issue. Van Egmond was granted the $3,936.57 and the amount was garnished from Ms. Brooks' 2023 tax refund.

81. In 2022, the Fair Housing Center and HUD filed a discrimination complaint on Ms. Brooks's behalf. That complaint remains pending.

**Yasha Hall**

82. Yasha Hall, a black woman, has been—and currently is—residing at Van Egmond's property at 10954 Mountain Ash, Grand Rapids, MI 49534 since January 2019.

83. Ms. Yasha Hall had disputes with a white neighbor who called the police alleging a variety of claims Ms. Yasha Hall denies to be true. Van Egmond served her with a Demand for Possession on October 1, 2021 due to these claims.

84.  Van Egmond attempted to evict Ms. Yasha Hall several times before her lease expired without good cause.

85. Ms. Yasha Hall has done her own repairs because she was afraid to ask Van Egmond, such as installing a new faucet in her kitchen, cleaning the carpets, hiring pest control.

86. Van Egmund would belittle Ms. Yasha Hall, raising his voice to talk over her. He has told her to "shut up and let [him] talk."

87. Ms. Yasha Hall's daughter, Ms. Shamarah Hall, also rents from Van Egmond. Ms. Yasha Hall is not on her daughter's lease in any capacity.

88. Van Egmond told Ms. Yasha Hall he would take her daughter to court if Ms. Yasha Hall did not pay what Von Egmond believed he was owed. She paid him about $4,000 for those damages.

89. In 2022, the Fair Housing Center and HUD filed a discrimination complaint on Ms. Yasha Hall's behalf. That complaint remains pending.

**Shamarah Hall**

90. Shamarah Hall, a black woman, signed a lease in December 2020 to rent Van Egmond's property at 4766 Brookside Drive SW, Grandville, MI 49418.

91. Michigan State Housing Development Authority (MSHDA) assisted Ms. Shamarah Hall with rent for the lease.

92. Shortly after Ms. Shamarah Hall moved into the apartment, Van Egmond informed her that she had to pay him an additional fee due to her credit score.

93. Ms. Shamarah Hall once fell asleep in her parked car in her driveway after working third shift. In response to this, Van Egmond called her a "devil" and swore at her for falling asleep and accused her of leaving her children unattended. Her children's father was watching the children at the time.

94. When the washer and dryer units broke down in Ms. Shamarah Hall's building, Van Egmond alleged that one of her children's socks broke the dryer. Ms. Shamarah Hall was the only person in her building with children. Van Egmond told her that he would kick her out if she didn't pay for the repairs.

95. When the dishwasher in Ms. Shamarah Hall's apartment broke down, Van Egmond refused to repair it and told her to just move out.

96. Van Egmond regularly entered Ms. Shamarah Hall's unit without notice or permission. During one incident, Ms. Shamarah Hall was asleep in her locked apartment. She awoke to Van Egmond inside her apartment repairing a thermostat. Ms. Shamarah Hall was naked at the time. Van Egmond did not call her before entering her unit.

97. The father of Ms. Shamarah Hall's children, a black man, would watch her children when she was at work. Van Egmond told her that she was not permitted to have company and was not allowed to have people over.

98. When Ms. Shamarah Hall would call Van Egmond requesting that he repair something in her apartment, he would yell at her and tell her that he didn't want her in his unit, that no one wanted her there, and that her kids were too loud. Once he called her a "nigger."

99. Ms. Shamarah Hall's car caught on fire while parked in her driveway. The fire caused damage to a neighbor's car. Van Egmond sent her a letter stating that if she didn't pay her neighbors for the damage that her lease would be terminated.

100. Van Egmond kept Ms. Shamarah Hall's entire security deposit. He made her mother, Ms. Yasha Hall, pay the cleaning fee for Ms. Shamarah Hall's unit.

101. In 2022, the Fair Housing Center and HUD filed a discrimination complaint on Ms. Shamarah Hall's behalf. That complaint remains pending.

### COUNT 1: VIOLATIONS OF THE FAIR HOUSING ACT

102. Plaintiffs incorporate all prior paragraphs by reference.

103. Van Egmond, on his own behalf and on behalf of Big Sky Properties, LLC and Avalon Properties of Grand Rapids, LLC, has discriminated in the terms, conditions, or privileges of the rental or a dwelling, in violation of 42 U.S.C. §3604(b), because of race, sex, disability, and familial status.

104. Van Egmond engaged in a practice of discrimination towards black women that included: charging them for repairs generally covered by landlords, unjustly blaming them for damages and charging them for the repairs, asserting terms regarding children and guests not included in their leases, assuming black guests and children were unauthorized occupants, tasking white neighbors to monitor and report on their activities, entering their units unannounced and without notice (often when they were in a state of undress), using derogatory and racialized language toward them, engaging in physical intimidation of them, and penalizing them for their credit scores by charging them more each month.

105. When black women had disputes with white neighbors, Defendant Van Egmond asked the black women to move instead of the white neighbors.

106.    Defendant Van Egmond serviced his properties at no charge for some white residents and charged for those same services for black women.

107.    Defendant Van Egmond holds black people to a stricter standard of behavior than Defendant holds white residents to, and attempts to evict black women for actions that Defendant's white residence are also engaging in.

108.    Defendant Van Egmond unlawfully entered Plaintiffs' residences without notice and unannounced.

109.    Among other things, Van Egmond violated Plaintiffs' rights as tenants while respecting those rights for white tenants – including quiet enjoyment, rights afforded under the lease, and the right to the return of their security deposits.

110.    As a result of Defendant's conduct, Plaintiffs have been injured and are aggrieved persons under 42 U.S.C § 3602(i).

111.    Plaintiffs request a judgment awarding damages arising from Defendant's conduct including punitive damages and reasonable attorneys' fees and costs.

**COUNT 2: VIOLATIONS OF THE CONSUMERS PROTECTION ACT**

112.    Plaintiff incorporates all prior paragraphs by reference.

113.    Defendant Van Egmond, on his own behalf and on behalf of Big Sky Properties, LLC and Avalon Properties of Grand Rapids, LLC, engaged in trade or commerce by leasing rental properties to all Plaintiffs.

114.    Defendant violated the Michigan Consumer Protection Act (CPA) by "failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be know by the consumer" by charging Plaintiffs for repairs commonly made at the landlord's expense.

115.   Defendant also violated the CPA by "[c]ausing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction" by entering many of the Plaintiffs' rental units without notice or permission, violating Plaintiffs' right to quiet enjoyment of the premises.

116.   Defendant violated the CPA by "[f]ailing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest" by failing to return Plaintiffs' security deposits and making statements which misrepresented the conditions of the premises.

117.   Plaintiffs suffered a loss as a result of the Defendant's violations.

118.   Plaintiffs request a judgment awarding actual or statutory damages, whichever is greater, and reasonable attorneys' fees and costs based on Defendant's violations of the Consumer Protection Act.

### COUNT 3: VIOLATION OF REGULATION OF COLLECTION PRACTICES ACT

119.   Plaintiffs incorporate all prior paragraphs by reference.

120.   Defendant is a Regulated Person as defined by the act. MCL 445.251.

121.   Defendant used harassing, oppressive and abusive methods to collect debts from Plaintiffs by using racialized and derogatory language and participating in physical altercations in the collection of debt.

122.   Defendant's violations were willful.

123.   Plaintiffs request a judgment awarding actual or statutory or treble damages, whichever is greater, and reasonable attorneys' fees and costs based on Defendants violation of the Regulation of Collection Practices Act.

## COUNT 4: VIOLATIONS OF THE LANDLORD TENANT RELATIONSHIP ACT

124.   Plaintiffs incorporate all prior paragraphs by reference.

125.   Defendant, on his own behalf and on behalf of Big Sky Properties, LLC and Avalon Properties of Grand Rapids, LLC, retained Plaintiffs' security deposits when there was not damage beyond normal wear and tear in violation of the Landlord Tenant Relationship Act (LTRA). See MCL 554.607.

126.   Defendant retained Plaintiff's security deposits without a right to do so and without adhering to the requirements of the LTRA.

127.   Plaintiffs request that this court enter a judgment awarding twice the amount of the security deposit, together with attorneys' fees and costs.

## COUNT 5: VIOLATION OF MICHIGAN'S ANTI-LOCKOUT STATUTE

128.   Plaintiffs incorporate all prior paragraphs by reference.

129.   The statute provides that unlawful interference with a possessory interest includes causing an interruption of service, including access to the rental property and property inside of the rental property.

130.   Michigan's Anti-Lockout Statute provides that a tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner is entitled to recover damages. MCL 600.2918(2).

131.   Plaintiff Alicia Spencer was locked out of her rental unit and kept from her personal property while her lease was still valid.

132.  Plaintiff requests that the Court enter a judgment awarding Plaintiff three times her actual damages, including damages for emotional distress, statutory damages, reasonable cost, and attorney's fees.

## COUNT 6: PIERCING THE CORPORATE VEIL

133.  Plaintiffs incorporate all prior paragraphs by reference.

134.  Defendant Van Egmond uses Defendant Big Sky Properties and Defendant Avalon Properties as mere instrumentalities.

135.  Defendant Van Egmond has used Defendant Big Sky Properties and Defendant Avalon Properties to engage in the wrongs listed above.

## COUNT 7: CIVIL CONSPIRACY

136.  Plaintiffs were injured by those wrongs.

137.  Wherefore, Plaintiffs request that this Court pierce the corporate veil of the Defendants, and to hold them all liable to Plaintiffs for the wrongs identified above.

138.  Plaintiffs incorporate all prior paragraphs by reference.

139.  Defendant Van Egmond, Defendant Big Sky Properties,  and Defendant Avalon Properties worked in concert to violate the Fair Housing Act, Michigan Consumer Protection Act, Regulation of Collections Practices Act, Landlord and Tenant Relationships Act, and Michigan's anti-lockout statute as described above.

140.  Plaintiffs were harmed by these violations.

141.  Wherefore, Plaintiffs request a judgment finding all Defendants jointly as severally liable to Plaintiffs.

## REQUEST FOR RELIEF

For all of the above reasons, Plaintiffs respectfully request that the Court grant the following relief against Defendant:

19

(A) Any affirmative relief as may be necessary to remedy Defendant's past discriminatory practices and decisions and to ensure that Defendant does not discriminate on grounds of race or sex in the future;

(B) Award actual, statutory, and compensatory damages to compensate Plaintiffs for their economic losses and damages, and non-economic injuries, such as physical pain and suffering, emotional distress, loss of civil rights, humiliation and embarrassment caused by the actions of Defendant in an amount to be determined at trial;

(C) Award Plaintiffs punitive and/or exemplary damages as a result of Defendant's deliberate, intentional, overt, willful, and flagrant discrimination in an amount that reflects the dual purposes of punishment and deterrence;

(D) Award Plaintiffs double any amount that has been unjustly withheld from a security deposit for Defendant's violations of the LTRA;

(E) Award Plaintiffs attorney's fees and costs;

(F) Grant any other or additional relief that the Court finds just and appropriate under the circumstances.


**JURY DEMAND**

Plaintiffs demand a trial by jury.


Respectfully submitted,
Legal Aid of Western Michigan


*/s/Ashleigh Pelto*

Ashleigh Pelto (P87933)
Legal Aid of Western Michigan
25 Division Ave S, Suite 300
Grand Rapids, MI 49503
(616) 608-8027
apelto@lawestmi.org